# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| RANDALL HOWARD EVANS, SR., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ANDREW M. SAUL, ) <br> **Commissioner of Social Security,** ) <br> ) <br> Defendant. ) | Case No. 4:19CV1931 HEA |

## OPINION, MEMORANDUM AND ORDER

This matter is before the court for judicial review of the final decision of the Commissioner of Social Security denying the application of plaintiff for disability insurance benefits under Title II, 42 U.S.C. §§ 401, *et seq*. and denial of supplemental security income benefits under Title XVI, 42 U.S.C. §§ 1381, *et seq*. The Court has reviewed the filings and the administrative record as a whole which includes the hearing transcript and medical evidence. The matter will be remanded for further proceedings as provided herein.

## Background

Plaintiff protectively filed for Disability Insurance Benefits and Supplemental Security Income on October 19, 2015, alleging disability beginning January 1, 2012. (Tr. at 178-189). He received an initial denial on February 26,

2016. (Tr. at 99-108). Plaintiff filed a timely Request for Hearing on March 22, 2016. (Tr. at 111-115). He attended a hearing before ALJ Robin J. Barber on December 14, 2017. The ALJ rendered an unfavorable decision dated October 2, 2018. (Tr. at 26-75, 7-25). In the decision, the ALJ found Plaintiff had the severe impairments of mild degenerative disc disease of the cervical spine; minimal bilateral periarticular patellar spurring of the knees; small/mild/minimal patellar tear, fray and chondrosis of the right knee; obesity; osteoarthritis of the left wrist; asthma; diabetes mellitus with proliferative diabetic bilateral retinopathy; and mild to moderate bilateral nuclear cataract. (Tr. at 13). While the ALJ found none of Plaintiff's impairments met or equaled a listed impairment, she did find some limitations. (Tr. at 13). Specifically, the ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform:

> medium work…except he should never climb ropes, ladders or scaffolds, but is able to occasionally climb ramps and stairs. He is able to occasionally stoop, kneel, crouch and crawl. The claimant should avoid all exposure to unprotected heights, unprotected (exposed) moving mechanical machinery, and unprotected (exposed) caustic chemicals. He should avoid concentrated exposure to pulmonary irritants such as gases and fumes. The claimant should never operate a motor vehicle and is able to read larger print and signs.

(Tr. at 14).

Based on vocational expert testimony, the ALJ found Plaintiff was unable to perform any of his past relevant work but could perform other work such as dining room attendant, laundry worker, and binder and wrapper packer. (Tr. at 18, 19-20).

2

Plaintiff filed a timely Request for Review of Hearing Decision/Order on November 1, 2018. (Tr. at 177). The Appeals Council, on May 13, 2019, denied the request. (Tr. at 1-6). Plaintiff has exhausted all administrative remedies. Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## Record Evidence

The following relevant evidence appears in the record:

On October 29, 2015, Plaintiff underwent a consultative physical examination, performed by Arjun Bhattacharya, M.D. Plaintiff told Dr. Bhattacharya that he could walk about two blocks, stand for about 30 minutes, sit for two hours, climb six to eight steps and lift up to about 20 pounds and that he was able to do regular housework, including cooking, laundry and grocery shopping. Plaintiff added that he had difficulty bending and stooping and that when he performed repetitive gripping with the right hand the hand would become "very tired" and at that point he was "inclined to drop objects." Dr. Bhattacharya's clinical impression, based on the examination,

> was low back pain with decreased range of motion, but no neurological deficit identified (with Xray of lumbar spine showing minimal spur formation at L3 and L4); crepitations in the right knee with full range of motion, but pain/discomfort with placing stress on the knee (and x-ray showing slight lateral joint space narrowing); and reported tiring of the hands on repetitive movement, but full range of motion and apparent normal function.

(Tr. at 331-335).

3

Dr. Bhattacharya also noted that Plaintiff's corrected vision was 20/20 on the right and 20/25 on the left. (Tr. at 337). Finally, Dr. Bhattacharya noted on examination that there was some decrease in flexion-extension of the right knee; some decrease in forward flexion, backward extension and abduction of the hips; and some decrease in flexion-extension and lateral flexion of the lumbar spine. Additionally, supine straight leg raising was limited to 60 degrees on both the right and left. (Tr. at 338-339).

On January 15, 2016, Plaintiff underwent a consultative internal medicine examination performed by Veronica Weston, M.D. Dr. Weston also reviewed the x-ray studies of Plaintiff's lumbosacral spine and right knee done in connection with Dr. Bhattacharya's evaluation. On examination, Dr. Weston found tenderness to palpation over the superior patellofemoral borders of the knees and the joint midline; osteoarthritic changes at the distal interphalangeal joints of the right hand with decreased grip strength and very mild deficits to fine and gross finger control; slightly decreased air entry bilaterally, with unlabored respiration; corrected visual acuity of 20/25 in the right eye and 20/30 in the left eye, with slight resting tremor and tics of the eyes; no obvious deformities to the rib cage; decreased pinprick sensation in the bilateral feet to the calves, possibly indicating peripheral neuropathy or diabetes mellitus; and elevated blood pressure. (Tr. at 349-350).

4

Dr. Weston also completed a chart assessing Plaintiff's ability to perform fine and gross manipulative movements of the hands and fingers. Dr. Weston indicated that Plaintiff had mild difficulty in the areas of opening a door using a knob and squeezing a blood pressure cuff bulb (with the right hand), mild difficulty in the area of opening a door using a knob (with the left hand), mild difficulty in the area of buttoning/unbuttoning (with both the right and the left hand), and a mild degree of overall weakness of both hands. (Tr. at 351). Additionally, Dr. Weston stated that Plaintiff had some limitation of flexion-extension and lateral extension of the lumbar spine and a positive straight leg raising test on both the right and left while supine. (Tr. at 354).

Laboratory testing Plaintiff underwent on or about February 11, 2016, showed that he had a blood glucose level of 305. (Tr. at 423). Further testing done on February 22, 2016, showed a hemoglobin A1c value of 12.1, which was noted to be consistent with diabetes mellitus. (Tr. at 442). Staff notes from the Healing Grace Clinic (Healing Grace) dated March 2, 2016, state that Plaintiff was a newly diagnosed diabetic. (Tr. at 420). Additional notes from Healing Grace indicate that on April 7, 2016, Plaintiff was seen for instruction in insulin injection and administration. (Tr. at 410).

David Prange, O.D., saw Plaintiff on March 14, 2016. Dr. Prange noted that Plaintiff had cataracts. Dr. Prange additionally noted that Plaintiff reported

5

headaches, floaters and blurred vision; being bothered by light; itching, burning, tearing and dryness of the eyes; eye pain; and a feeling that his eyes were "tired" or "sandy/gritty." (Tr. at 357).

On March 30, 2016, x-rays of the bilateral wrists showed osteoarthritis in the first metacarpal trapezium and scaphotrapezium articulations bilaterally, with large periarticular ossicles, as well as negative ulnar variance bilaterally, with osteoarthritis in the distal radioulnar articulations. (Tr. at 451-452). X-rays of Plaintiff's knees done on that same date revealed minimal periarticular spurring bilaterally. (Tr. at 453). An MRI study of the right knee on April 6, 2016, showed a small free edge radial tear involving the body of the lateral meniscus, together with mild free edge and inferior articular surface fraying in the posterior horn and a possible tiny parameniscal cyst. The study revealed borderline patella alta, superolateral Hoffa's fat-pad edema and minimal lateral patellar chondrosis. The study was read by Mohammed Nawas, M.D. (Tr. at 368-369).

On May 9, 2016, Bruce Jones, M.D., a specialist in orthopedics, saw Plaintiff for right knee pain. Dr. Jones stated that his examination of Plaintiff's right knee was consistent with advanced arthritis. Dr. Jones advised Plaintiff to take Tylenol for pain because other medications would be harmful to his kidneys, and he performed a betamethasone injection. Dr. Jones added that an Xray of Plaintiff's right knee showed significant narrowing of the lateral compartment,

6

which raised "a question of some degenerative changes." (Tr. at 371-373). X-ray studies of the cervical spine on September 9, 2016, showed straightening of the normal cervical lordosis; mild disc space narrowing at C3-4; and moderate disc space narrowing at C4-5 and C5-6, with associated degenerative endplate change. Dr. Watson added that there was likely mild spinal canal narrowing at C5-6. (Tr. at 447). On September 26, 2016, Plaintiff was seen by Lisa Thatch, O.D., who noted that he had posterior subcapsular polar age-related cataract, bilateral. Dr. Thatch advised cataract extraction and referred Plaintiff to an ophthalmologist. (Tr. at 468).

A physical therapist who evaluated Plaintiff, Jeanine Schierbecker, P.T., noted on January 17, 2017, that Plaintiff had a diagnosis of right shoulder and arm pain with paresthesia and that his restrictions included impaired posture, muscle length deficits (tightness), pain limiting function, range of motion deficits and strength deficits. (Tr. at 466).

Robert Lewis, M.D., a specialist in ophthalmology and ophthalmic surgery, saw Plaintiff on January 29, 2018. After examination, Dr. Lewis opined Plaintiff was able to avoid ordinary hazards in the work place (such as boxes on the floor, doors ajar or approaching people or vehicles); that he could not read very small print or ordinary newspaper or book print; that he could view a magnified computer screen; and that he was not able to determine differences in shape and

7

color of small objects such as screws, nuts or bolts. Dr. Lewis further opined that Plaintiff's impairments were not as severe as indicated by Plaintiff. Dr. Lewis opined that Plaintiff should never be exposed to unprotected heights or moving mechanical parts and should never operate a motor vehicle, but that he could tolerate occasional exposure to humidity/wetness, pulmonary irritants, temperature extremes and vibrations and that he could tolerate moderate noise (such as that in an office). Lastly, Dr. Lewis stated that Plaintiff's vision limitations had been first present approximately two years earlier and that they would last for 12 consecutive months. (Tr. at 479-481).

## Hearing Testimony

Plaintiff appeared and testified at the December 14, 2017, hearing before ALJ Barber. He stated that he lived in a single-story house with a friend who worked part-time and that he and his friend shared household chores such as cleaning, cooking, laundry and grocery shopping. (Tr. at 37-38). He added that he had a driver's license with restrictions and that he had a dog and was able to care for the dog with the help of his friend. (Tr. at 39-40). Plaintiff testified that he had diabetes mellitus that was treated with both oral medication and insulin and that his usual daily activities included preparing simple meals, doing housework for short periods of time and exercising by walking in a large store with his friend. (Tr. at

8

41-42). He added that his diabetes mellitus had initially caused some kidney problems, but that these had resolved with treatment. (Tr. at 45).

Plaintiff testified that he had difficulty with daily activities because of pain in the hands, back and knees, some of which he believed was related to arthritis. He additionally testified that he had a congenital disorder of the wrist bones, that his hands would sometimes "lock" when doing things such as holding hand tools and that his hand pain was worse in cold conditions. (Tr. at 45-48). Plaintiff stated that his knees, in addition to being painful, would occasionally "go out," causing problems with standing, walking and moving quickly, especially on hard surfaces. (Tr. at 48-49). He described difficulty bending and lifting and stated that he was unable to perform tasks such as folding laundry because gripping caused pain. (Tr. at 49-50). He added that he could hold a 15-pound bag of dog food for no more than five minutes at a time. Plaintiff acknowledged his pain medication was limited to ibuprofen and acetaminophen. (Tr. at 51-52). Plaintiff testified that he had cataracts that made his vision "foggy" and that he was "practically blind" in the right eye, but that he was unable to have cataract surgery because he had no health insurance. (Tr. at 55).

A vocational expert also testified at the hearing and provided vocational interrogatory responses after the hearing. (Tr. at 59-60, 302-305, 322-324).

## **Legal Standard**

To be eligible for DBI under the Social Security Act, Plaintiff must prove that he is disabled. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual will be declared disabled "only if [his] physical or mental impairment or impairments are of such severity that [he] is not only unable to do [his] previous work but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner engages in a five-step evaluation process to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). At Step One, the ALJ determines whether the claimant is currently engaged in substantial gainful activity. At Step Two, the ALJ considers whether the claimant has a "severe" impairment or combination of impairments. At Step Three, the ALJ determines whether the severe impairment(s) meets or

medically equals the severity of a listed impairment; if so, the claimant is determined to be disabled, and if not, the ALJ's analysis proceeds to Step Four. At Step Four of the process, the ALJ must assess the claimant's residual functional capacity (RFC) – that is, the most the claimant is able to do despite his physical and mental limitations, *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) – and determine whether the claimant is able to perform any past relevant work. *Goff v. Barnhart,* 421 F.3d 785, 790 (8th Cir. 2005) (RFC assessment occurs at fourth step of process).

The claimant bears the burden through Step Four of the analysis. If he meets this burden and shows that he is unable to perform his past relevant work, the burden shifts to the Commissioner at Step Five to produce evidence demonstrating that the claimant has the RFC to perform other jobs in the national economy that exist in significant numbers and are consistent with his impairments and vocational factors such as age, education, and work experience. *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012).

The Court must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Jones*, 619

11

Additionally, the Court must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision. *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, the Court must affirm the Commissioner's decision; the Court may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *Id; see also Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017).

## Decision of the ALJ

At Step One of the of the decision from October 2, 2018, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2012, his alleged onset date. At Step Two, the ALJ found that Plaintiff had the severe impairments of mild degenerative disc disease of the cervical spine; minimal bilateral periarticular patellar spurring of the knees; small/mild/minimal patellar tear, fray and chrondrosis of the right knee; obesity; osteoarthritis of the left wrist; asthma; diabetes with proliferative diabetic bilateral retinopathy; and mild to moderate bilateral nuclear cataract. The ALJ found Plaintiff did not have an impairment or combination of impairments listed in or medically equal to one contained in the Listings, 20 C.F.R. part 404, subpart P, appendix 1, (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

12

The ALJ determined that plaintiff retained the residual functional capacity to perform medium work except he should never climb ropes, ladders or scaffolds; he is able to occasionally climb ramps and stairs.  He is able to occasionally stoop, kneel, crouch, and crawl.  He should avoid all exposure to unprotected heights, unprotected (exposed) moving mechanical machinery and unprotected (exposed) caustic chemicals.  He should avoid concentrated exposure to pulmonary irritants such as gasses and fumes.  He should never operate a motor vehicle and is able to read larger print and signs.

At Step Four, the ALJ found that plaintiff is unable to perform his past relevant work as a stock room clerk and forklift driver.  At Step Five, the ALJ found that there are jobs that exist in significant number in the national economy that Plaintiff could perform, such as a dining room attendant, laundry worker and binder and wrapper packer.  Therefore, the ALJ found Plaintiff not disabled.

## Statement of the Issues

Generally, the issues in a Social Security case are whether the final decision of the Commissioner is consistent with the Social Security Act, regulations, and applicable case law, and whether the findings of fact are supported by substantial evidence on the record as a whole. The issue here is: 1) whether the ALJ properly created an RFC supported by substantial evidence of record

## Discussion

A claimant's RFC is the most an individual can do despite the combined effects of all of his or her credible limitations. *See* 20 C.F.R. § 404.1545. An ALJ's RFC finding is based on all of the record evidence, including the claimant's testimony regarding symptoms and limitations, the claimant's medical treatment records, and the medical opinion evidence. *See Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir.2010); *see also* 20 C.F.R. § 404.1545; Social Security Ruling (SSR) 96–8p.

Plaintiff first asserts that the RFC is not supported by substantial evidence because the ALJ did not account for or discuss the advanced and moderate conditions discussed in the medical record, but only discussed and relied on mild conditions in finding Plaintiff can perform a full range of medium work. Plaintiff argues that although the ALJ does not have to list every impairment and find evidence that detracts from Plaintiff's claims, the ALJ must provide a narrative explanation of what evidence supports such a finding. Plaintiff argues the ALJ did not support her conclusions with medical evidence; rather, she summarized the evidence and simply concluded that Plaintiff could perform medium work with no bridge between the two.

The Court's role in appeals of this nature is limited and deferential—the Eighth Circuit has held that the Court should "review the record to ensure than an ALJ does not disregard evidence or ignore potential limitations," rather than ensure

14

that each and every aspect of the RFC determination is supported by citations to specific evidence in the record. *See Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1090-91 (8th Cir. 2018) (internal quotation omitted). The ALJ's decision fails to fully and fairly evaluate the available medical evidence. While the ALJ may have considered Plaintiff's moderate and advanced conditions in making her RFC determination, the decision lacks discussion thereof. The summary of the medical evidence provides the basis for the ALJ's conclusions with regard to "mild" findings, however, the decision fails to discuss why the ALJ concluded Plaintiff can perform medium work *vis a vis* Plaintiff's moderate and advanced conditions. Because the ALJ failed to address these issues, the Court cannot conclude that she did not disregard the evidence.

The Court agrees with Plaintiff that it cannot ascertain whether the ALJ ignored the medical evidence of advanced and moderate disease to arrive at her conclusions. While the ALJ is not required to specifically discuss every piece of evidence submitted, *Wildman v. Astrue,* 596 F.3d 959, 966 (8th Cir. 2010), the ALJ should at least "minimally articulate h[er] reasons for crediting or rejecting evidence of disability." *Ingram v. Chater*, 107 F.3d 598, 601 (8th Cir. 1997); *see Taylor ex rel. McKinnies v. Barnhart*, 333 F.Supp.2d 846, 856 (E.D. Mo. 2004) ("An 'ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of non-disability.'").

15

## Conclusion

For the reasons set forth above, this matter must be remanded for further proceedings as detailed herein.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is reversed pursuant to sentence four of 42 U.S.C. § 405(g).

**IT IS FURTHER ORDERED** that this matter is remanded to the Commissioner for further proceedings.

A separate judgment shall be entered incorporating this Opinion, Memorandum, and Order is entered this date.

Dated this 5th day of November, 2020.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE